IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAN AND SHERRI ROGERS, individually and as Personal Representatives of the ESTATE OF KRYSTLE ROGERS, deceased, et al., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. CIV-04-146-L |
| ANHEUSER-BUSCH, INCORPORATED, a Missouri corporation, et al., | ) ) ) | |
| Defendants. | ) | |

# **O R D E R**

This action arises out of a tragic automobile accident that occurred on May 4, 2002. On that date, an intoxicated driver, Randall Albright, III, struck the vehicle in which Krystle Rogers, James Brad Dooley, Tiffany Harper, and Anna Christine Harper were riding. Ms. Rogers was killed and the remaining passengers were injured. On February 12, 2004, plaintiffs filed this action seeking damages for negligence and wrongful death. This matter is before the court on defendants[1] motion for summary judgment on the issue of liability.

_____

[1]The complaint names two defendants: Anheuser-Busch, Incorporated and Anheuser-Busch, Incorporated, d/b/a, Anheuser-Busch Sales of Tulsa. In an earlier motion to dismiss, defendants represented that Anheuser-Busch Sales of Tulsa is a division of Anheuser-Busch, Incorporated.

1

Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party "must set forth *specific* facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts establish that Henry Moore is the owner of two corporations, Northern Limits, Inc. and B & E Enterprises, Inc. ("B&E"), both of which

hold Oklahoma licenses to sell 3.2 beer.  Affidavit of Henry R. Moore at ¶ 3-4.  The two companies are collectively referred to as "Tumbleweed," although B&E is the operator of the club by that name in Stillwater, Oklahoma.  Deposition of Henry "Hank" Moore, Jr. at 138, 151-52.  Adjacent to the club is an outdoor concert arena on which Tumbleweed holds an annual country music concert known as the Calf Fry. Id. at 133-35, 145.  Pursuant to a contract executed April 19, 2002,[2] defendants paid a $7,500.00 sponsorship fee to be the exclusive title sponsor for the event.  Exhibit 2 to Defendants' Motion for Summary Judgment.  Exclusive title sponsorship provided Anheuser-Busch "would receive top billing in advertising above all other sponsors."  Deposition of Scott Stillwell at 41.

The ticket price for the 2002 Calf Fry included admission to the concert, dinner, and – for the first hour of each day – free Anheuser-Busch draught beer.  Id. at 140-42.  Thereafter, the draught beer and other alcoholic and non-alcoholic beverages were sold throughout the evening.  Although Anheuser-Busch was the exclusive title sponsor for the event, other brands of alcoholic beverages were also served at the Calf Fry.  Id. at 161-62.

---

[2]On its face the contract provides that it is between "Anheuser-Busch, Incorporated, a Missouri corporation d/b/a Anheuser-Busch Sales of Tulsa ("AB"), and TryAd Inc., d/b/a TryAd Promotions, an Oklahoma corporation . . . and Jennifer Hasel, individually . . . ."  Exhibit 2 to Defendants' Motion for Summary Judgment at 1.  Plaintiffs contend that, for purposes of this contract, TryAd is a sham corporation and the contract was really between defendants and Moore. Resolution of this dispute is not material to the court's ruling on defendants' motion for summary judgment.

Defendants provided the draught equipment to be used at the 2002 Calf Fry. This equipment included three large refrigerated trucks from which Anheuser-Busch draught beer could be served. The day before the Calf Fry began, defendants' employees delivered the trucks to the arena, positioned them, and made sure they were operational. Deposition of Jeffrey Morgan Hunt at 38-39; Deposition of Michael Keller at 87. During the two-day event, defendants' employees tapped kegs, maintained the equipment and lines so that beer flowed freely, and changed kegs as they were emptied.[3] Although all the equipment was provided and maintained by defendants, it was Tumbleweed's employees who actually operated the taps to serve the beer to Calf Fry patrons; no Anheuser-Busch employee poured or served 3.2 beer during the event.[4] Likewise, Anheuser-Busch did not permit Tumbleweed employees to enter the refrigerated trucks to change out kegs. Deposition of Michael Keller at 153-54. Before the event began, Tumbleweed and defendants estimated the number of kegs defendants should provide; Tumbleweed, however, only paid for kegs that were actually tapped during the event. Deposition of Kevin Michael Armitage at 78.

In addition to the draught equipment, defendants provided signage for the event, including parking directions, promotional signs, and signs indicating the price

---

[3]Affidavit of Henry R. Moore at ¶ 11; Deposition of Jeffrey Morgan Hunt at 45; Deposition of Refugio Rodriguez at 51; Deposition of Ryan Jensen at 31; Deposition of Michael Keller at 91, 106.

[4]Affidavit of Henry R. Moore at ¶ 9; Deposition of Jeffrey Morgan Hunt at 71; Deposition of Ryan Jensen at 31-32; Deposition of Kevin Michael Armitage at 42-44.

charged for Anheuser-Busch products.  These signs were produced at defendants'

Tulsa shop and were provided to Tumbleweed free of charge.  Deposition of Michael

Keller at 55, 61-68, 71.

For purposes of ruling on this motion, defendants do not contest that plaintiffs'

claims arise out of the May 4, 2002 automobile accident.  The complaint alleges that

the person responsible for the accident, Randal Albright, III, became intoxicated by

consuming Anheuser-Busch products at the Calf Fry that evening.  For purposes of

ruling on defendants' motion, the court accepts as true, without deciding, that

Albright consumed only Anheuser-Busch 3.2 beer that evening and that he was

served such products while he was visibly intoxicated.

In Brigance v. The Velvet Dove Restaurant, Inc., 725 P.2d 300 (Okla. 1986),

the Oklahoma Supreme Court recognized a limited common law dram shop action,[5]

holding that "one who sells intoxicating beverages for on the premises consumption

has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated

person."  Id. at 304.  The Court reasoned:

> It is not unreasonable to expect a commercial vendor who
> sells alcoholic beverages for on the premises consumption
> to a person he knows or should know from the
> circumstances is already intoxicated, to foresee the
> unreasonable risk of harm to others who may be injured

---

[5]In Sanders v. Crosstown Market, Inc., 850 P.2d 1061, 1062-63 (Okla. 1993), the Oklahoma Supreme Court emphasized "[w]e modified the common law rule in *Brigance*.  We did not abrogate it.  We created a cause of action for the innocent injured passenger against the restaurant owner. Our holding went no further."  Oklahoma courts have consistently recognized the limited nature of the *Brigance* holding by refusing to extend liability to social hosts or franchisors.  *See* McGee v. Alexander, 37 P.3d 800, 804-05 (Okla. 2001); Pate v. Alian, 49 P.3d 85, 90 (Okla. App. 2002).

> by such person's impaired ability to operate an
> automobile.

Id. Defendants contend plaintiffs' action seeks to extend *Brigance* beyond retail

sellers of alcoholic beverages.  They argue imposition of liability on the wholesalers

and manufacturers who supply tavern owners is inconsistent with Oklahoma's limited

dram shop action.  Plaintiffs counter that, under the unique facts at issue here,

defendants are liable either because they acted in joint venture with Tumbleweed or

because they violated 37 O.S. § 247, thus giving rise to negligence *per se*.

Under Oklahoma law, three elements must be established in order to find a

joint venture exists:  "1) A joint interest in property (the contribution need not be

equal or of the same character), 2) An express or implied agreement to share profits

and losses of the venture, 3) Action or conduct showing cooperation in the venture."

LeFlore v. Reflections of Tulsa, Inc., 708 P.2d 1068, 1072 (Okla. 1985) (citations

omitted).  If any one of the three elements is absent, a joint venture cannot be found.

McGee v. Alexander, 37 P.3d 800, 806 (Okla. 2001).  Based on the undisputed

facts, the court finds plaintiffs cannot establish the second element.[6]  There is no

evidence that Tumbleweed and defendants agreed to share in the profits or losses

of the 2002 Calf Fry; rather, the relationship between defendants and Tumbleweed

was one of supplier and purchaser.  The fact that Tumbleweed did not prepurchase

---

[6]Likewise, it is not at all clear that plaintiffs could establish a joint interest in property based
on the Oklahoma Supreme Court's pronouncement that it "is reluctant to find a 'joint interest in
property' wherever one party contracts for services with another."  McGee, 37 P.3d at 806.

a set amount of beer from defendants does not alter this relationship as defendants – as the supplier – charged Tumbleweed a predetermined price for each keg tapped during the two-day event.  *See* McGee, 37 P.2d at 806.  Moreover, plaintiffs admit that the price at which defendants sold 3.2 beer to Tumbleweed was the same price available to all retailers.[7]  Thus, defendants did not garner a greater profit or incur a loss due to the sales to Tumbleweed.  Furthermore, it is undisputed that defendants did not share in the receipts from ticket, food, beverage, or merchandise sales that occurred at the 2002 Calf Fry.  Plaintiffs attempt to prove profit-sharing by arguing that "Anheuser-Busch made an immediate financial profit on the kegs sold at the Calf Fry" and that "the more beer consumed at the event directly equated to more money Anheuser-Busch made."[8]  This argument, however, eviscerates the second element of the joint venture test and would open all suppliers to liability as joint-venturers.   This  is  inconsistent  with  the  Oklahoma  Supreme  Court's pronouncements in McGee, 37 P.3d at 806 (no joint venture where bar charged based on number of drinks provided at the bar's regular rate) and Commercial Lumber Co. v. Nelson, 72 P.2d 829 (Okla. 1937) (finding no joint venture where profit was based on "the sale of lumber and materials . . . and not any of the profits in the building venture itself").  Nor does the TryAd contract provide any evidence

---

[7]Plaintiffs Dan and Sherri Rogers' Response to Defendants' Motion for Summary Judgment at 3, ¶ 1 [hereinafter cited as "Rogers' Response"]; James Brad Dooley, Tiffany Harper and Anna Christine Harper's Response to Defendants' Motion for Summary Judgment at 3, ¶ 2 [hereinafter cited as "Plaintiffs' Response"].

[8]Rogers' Response at 17.

that defendants were "prepared to offer [their] services at a loss or reap additional profits depending on the success or lack thereof"[9] of the 2002 Calf Fry.

Likewise, plaintiffs cannot establish defendants violated Oklahoma's statute governing sales of 3.2 beer.  The statute provides "[n]o holder of a retail license or permit to sell low-point beer, or an employee or agent of a holder of such a license or permit, shall knowingly, willfully and wantonly sell, deliver or furnish low-point beer to an intoxicated person."  37 O.S. § 247.  Recognizing that the statute governs only the actions of retail sellers of 3.2 beer, the Rogers plaintiffs argue defendants were acting as retailers or co-retailers at the 2002 Calf Fry because they supplied and controlled the equipment from which the beer was poured and thus "furnished" alcohol within the meaning of the statute.  Both sets of plaintiffs also argue defendants are subject to the statute's proscriptions because Anheuser-Busch holds both a permit to sell low-point beer and a non-resident seller's licence.  *See* Exhibits O and P to Rogers' Response.

Plaintiffs' arguments, however, fail for the simple reason that section 247 applies only to holders of retail licenses or permits and it is undisputed that defendants do not hold a *retail* license or permit to sell 3.2 beer.[10]   Indeed, Oklahoma law specifically prohibits their obtaining such licenses.  *See* 37 O.S. §

---

[9]McGee, 37 P.3d at 806.

[10]Plaintiffs' evidence establishes that Anheuser-Busch has held "a valid WHOLESALER – LOW-POINT BEER PERMIT since September 1, 1996."  Exhibit P to Rogers' Response.

231(A)(1).   Extending liability under this section to manufacturers and wholesalers would violate the plain language of the statute.[11]   This court may not rewrite the statute to govern the actions of persons who do not hold retail licenses or permits. As a matter of law, defendants cannot be found negligent *per se* pursuant to this statute.[12]

Neither Oklahoma courts nor the Oklahoma legislature has extended dram shop liability to wholesalers and manufacturers of 3.2 beer.   Notwithstanding the tragic nature of plaintiffs' losses, this court cannot fashion such a remedy given the precedent the court must apply.   Defendants' Motion for Summary Judgment (Doc. No. 58) is thus GRANTED.   Judgment will issue accordingly.

It is so ordered this 15th day of March, 2006.

_Tim Leonard_

TIM LEONARD
United States District Judge

---

[11]The word "retail" in section 247 modifies both "license" and "permit".  Plaintiffs' argument that "the phrase 'retail permit' is not in the statute", Plaintiffs' Response at 7, is incorrect.  *See* 37 O.S. § 136.11.  Furthermore, other sections of Title 37 apply equally to manufacturers, wholesalers, and retailers.  *See, e.g.*, 37 O.S. § 163.26.  Still other sections apply only to holders of retail licenses or permits, *e.g.* 37 O.S. § 163.25, while others apply only to wholesalers or manufacturers, *e.g.*, 37 O.S. §§ 163.22, 231.  Thus, the Legislature  clearly knew how to differentiate between retailers, wholesalers, and manufacturers and how to delineate which provisions applied to which entity.  The fact that the Legislature referred only to holders of retail licenses or permits in section 247 speaks volumes as to its intent.

[12]Plaintiffs also intimate that defendants violated 37 O.S. § 231(A)(3) "by providing Tumbleweed beer trucks, signs, banners and employees."  Rogers' Response at 24 n.3.  Plaintiffs do not, however, attempt to establish negligence *per se* through that alleged violation, nor does it appear that they could do so based on the elements of a negligence *per se* action.  *See* Ohio Casualty Ins. Co. v. Todd, 813 P.2d 508, 510 (Okla. 1991).